The Townsend Savings Bank *vs.* Lyman E. Munson.

Lyman E. Munson *vs.* The Townsend Savings Bank.

*M* in 1869 gave his note for $3,500 to a savings bank and secured it by a mortgage of a tract of land. In 1870 he conveyed his interest in the land to *W* for $20,000, the purchaser assuming the payment of *M's* note at the savings bank, giving his note to *M's* wife for $10,000, with a mortgage of the land, and paying the balance in money. The savings bank was informed by them both of *W's* agreement to pay *M's* note, and made an entry on its books that the interest was to be paid by *W*, and thereafter regularly sent him notice when the interest fell due and until 1875 received the interest from him. In 1872 the savings bank, at *W's* request, and upon an estimate of the value of a certain portion of the land, but without *M's* knowledge, released all the rest of the mortgaged land to *W*, the portion retained being considered sufficient to secure *M's* note. *M*, soon after, and after he had learned of the quitclaim by the savings bank to *W*, at *W's* request joined with his wife in releasing to *W* a portion of the land released to him by the savings bank and covered by

Townsend Savings Bank *v.* Munson.

the mortgage to *M's* wife, for the purpose of enabling *W* to make a good title thereto, in consideration of which *W* paid to *M's* wife $4,250 on her note. The portion of the land retained by the savings bank proving wholly insufficient for the payment of *M's* note, the savings bank brought an action against him on the note, and he brought a bill in equity to enjoin the bank against the prosecution of the suit. Held—

1. That the savings bank 'had not, by its entry that *W* was to pay the interest on *M's* note, by sending notices to him of interest due, and by receiving interest from him, accepted him as its debtor in the place of *M.*

2. That by releasing a portion of the land to *W* without *M's* consent the savings bank had assumed the risk of the sufficiency of the portion retained to pay the mortgage debt, and could not come upon *M* to make good the loss.

3. That the fact that, after the savings bank had released a portion of the land to *W*, *M* had joined with his wife in releasing the land to *W*, did not affect the case, it not appearing that *M* was interested in his wife's mortgage, and the release being from the lien of her mortgage, and not from the lien of the savings bank mortgage, that having been already released.

ASSUMPSIT, by the Townsend Savings Bank against Lyman E. Munson upon a note executed by him, and a bill in equity by Munson against the Townsend Savings Bank for an injunction against the prosecution of the action; both brought to the Superior Court. The following facts were found by the court.

On the 9th of January, 1869, Lyman E. Munson borrowed of the Townsend Savings Bank thirty-five hundred dollars, and executed to the bank a promissory note therefor and a mortgage of a tract of land in the city of New Haven. This tract lay between two streets, being five hundred and thirty feet on one street and five hundred and twenty-seven on the other, and six hundred and sixty-seven feet deep from street to street.

On the 1st of April, 1869, Munson sold and conveyed by a warranty deed with the usual covenants to John Lynch, for the consideration of $2,200, sixty-six front feet by one hundred and forty-three feet deep, of the premises so mortgaged. On the 1st of March, 1870, in like manner Munson conveyed fifty-five feet front by one hundred and forty-three feet deep to Alfred Ellis, for about $2,000 consideration, a part of which was paid to Munson, and a part secured by a mortgage back from Ellis to Munson for $1,500.

On the 13th of June, 1870, Munson sold and conveyed

another lot of one hundred feet adjacent to the last mentioned lot, and paid the bank $500 on the mortgage, and the bank released the hundred feet front.

Munson paid the interest to the bank on the mortgage until he made a conveyance to James A. Wood on the 25th of June, 1870. On that day he conveyed his interest in the remainder of the land mortgaged to the bank for the sum of $20,000, a part of which consideration was the assumption by Wood of the payment to the bank of the note in question. The rest of the consideration was in Wood's note to the wife of Munson for $10,000, secured by a mortgage back of his interest in the land conveyed, and the balance in cash or its equivalent. The deed contained a provision that the grantee assumed the mortgage to the Townsend Savings Bank, then amounting to $3,000. The whole frontage thus conveyed to Wood was 1,843 feet.

Upon this sale by Munson to Wood they both went to the bank, and advised it of the sale and conveyance, and that the payment of the note had been assumed by Wood. The bank thereupon, in accordance with its usual custom, made a memorandum in its interest account book to notify Wood when the interest was due, but did not release Munson from his liability as maker of the mortgage note unless the facts found by operation of law create such release; and thereafter Munson had no further communication with the bank on the subject until after the appointment of receivers, September 28th, 1874.

The bank thereafter sent its usual notices for the payment of interest on the note to Wood, and the interest was regularly paid by him till January 5th, 1875. The notices were in the following form:—

"☞ If interest is not paid promptly, payment of the loan will be demanded.

"No. 374,657.

"Please bring this ticket.

"TOWNSEND SAVINGS BANK.

"Mr. James A. Wood—The interest on your loan is payable January 2d, 1874. $154.85."

On the 4th of April, 1872, Wood procured from a person who was accustomed to appraise property in New Haven, and had from time to time acted as appraiser for the bank, a certificate of the appraisal of a portion of the property mortgaged to the bank, and presented the same to the bank, with a request that it would release to him the remainder of the premises conveyed to him by Munson. The certificate was as follows:—

"NEW HAVEN, April 4, 1872. President of Townsend Savings Bank: I have examined the property of I. A. Wood, a lot on Silver street, 180 feet, about 150 feet deep, and a lot on Ivy street, 153 feet front by about 143 feet deep, both tracts lying between Newhall and Butler streets; and I estimate the market value of said lands at $20 per front foot, making the total value of the same $6,630."

The bank acceded to Wood's request, and on the 8th of April, 1872, quit-claimed to him all its interest in the premises conveyed to Wood by Munson and mortgaged back by Wood to Munson, excepting the two lots mentioned in the certificate.

By mistake the bank in its quit-claim included its interest in the lots of sixty-six feet front and fifty-five feet front which Munson had conveyed to Lynch and Ellis as before stated, and neither Wood nor the bank was aware of the mistake until after the present suit was brought, when Wood, without the knowledge of the bank, quit-claimed to the owners of the lots the interest which he had acquired from the bank by its quit-claim deed to him.

Munson had no knowledge of the quit-claim of the bank to Wood until just before the 28th of May, 1872, when Wood informed him of it, and requested him to quit-claim to him certain lots which he, Wood, had sold; and accordingly on the 28th of May, 1872, Munson released to Wood four different lots, one containing eighty-four front feet, one sixty, one two hundred and ten, and one a hundred and fifty-three front feet. And on the 28th of February, 1873, Munson quit-claimed to him his interest in two other pieces, one containing three hundred and twenty front feet, and one thirty front feet, and

in consideration thereof Wood paid to Munson $4,250, leaving $5,750 with interest from June, 1876, due upon the mortgage of $10,000 from Wood to Munson's wife. The quit-claims were made to enable Wood to give a good title to purchasers.[*]

The present value of the land originally mortgaged by Munson to the bank is from $3 to $4 per front foot. The bank has never foreclosed its mortgage.

Upon these facts both cases were reserved together for the advice of this court.

*T. E. Doolittle*, for the Townsend Savings Bank.

1. In the action at law, it is found that Munson made and delivered the $3,500 note to the savings bank, and received from the bank the money specified in the note. No reason can be assigned why he should not pay the note, except that he informed the bank that Wood had agreed to pay it. That information was simply for the convenience of the bank, so that when it sent out its usual notices as to interest falling due, the notice should be sent to Wood. This is in accordance with the habit of all savings banks. The bank, as the case finds, "did not release Munson from his liability as maker of the mortgage note, unless the facts found by operation of law create such release." But the law would require that there should be found a clear agreement that the bank should release and that it did release Munson from all liability, and took Wood in his stead as the principal debtor.

2. In the equity case there is no ground for the claim that the bank should not collect the note, and that Munson should not pay back to the bank the balance of the money due that he borrowed. Munson being the owner of a tract of land, mortgaged it to the bank for $3,500, and then sold two parcels of it, and conveyed the same by warranty deeds, and then sold and conveyed the remainder of the land so mortgaged, to Wood, for $20,000. A part of the consideration

---

[*] The quitclaim is stated in the finding to have been given by Munson. As the mortgage was to the wife of Munson and this mortgage lien was the interest to be released, it seems clear that the quit-claim must have been given by Munson and his wife. It is taken for granted that it is so in the opinion of the court.

was Wood's promise to Munson to pay the bank mortgage. In the first place, Munson had as between him and Wood a vendor's lien upon the land for the portion of the consideration unpaid.   In the next place he took a mortgage upon the land sold to Wood, for $10,000.   Now Munson bases his claim for an injunction upon the fact that the bank quit-claimed a part of the land to Wood, which Munson had conveyed to him.   This quit-claim was made April 8th, 1872, by the bank, when it supposed it had abundant security left.   In a few days, May 28th, 1872, Wood told Munson that the bank had quit-claimed to him as above stated, and requested Munson to quit-claim to him, so that he could give a good title to the purchasers from Wood.   Now Munson, with full knowledge of all that the bank had quit-claimed, and that his second mortgage had thereby become a first mortgage, quit-claimed to Wood, upon Wood's paying him $4,250, much more than the debt due to the savings bank, and with his second mortgage remaining a first mortgage upon that part which he did not quit-claim to Wood.   Now, upon this state of facts, how has Munson any equity against the bank to release him from the payment of his debt?   Above all, if he had any fault to find with the bank, why did he not at the time tell the bank it had quit-claimed too much to Wood and give it an opportunity to secure itself by a suit against Wood. He who seeks equity must do equity.   Munson has not been injured by any action of the bank.   He has been benefited, first, to the extent of $4,250, paid to him; second, by the fact that his second mortgage dropped down and became a first mortgage; and third, by the fact that the two parcels which he conveyed with covenants of warranty have been discharged from the mortgage which he gave the bank by the release to Wood of which he now complains.   It is true that Wood did not ask for the quit-claim of the two parcels which Munson conveyed to Lynch and Ellis, with covenants of warranty, and the bank did not intend to quit-claim them; but nevertheless, the mistake inured to the benefit of Munson, and to a far greater amount than the amount due the bank.

*C. R. Ingersoll* and *F. G. Ingersoll*, with whom was *L. E. Munson*, for Munson.

1. The bank by dealing with Wood as its debtor, and releasing to him the principal part of its mortgage security, substituted a new contract for the old one, and by accepting the personal obligation of Wood, discharged Munson. The purchase of the mortgaged land by Wood, for a consideration of which the assumption by him of the payment to the bank of Munson's note was a part, and his agreement with Munson, evidenced by the deed he took, to assume upon himself that obligation, created a personal liability on his part to the bank, which the bank could thereafter make itself privy to and enforce against him by action at law. *Thorp* v. *Keokuk Coal Co.*, 48 N. York, 253; *Burr* v. *Beers*, 24 id., 178; *Fiske* v. *Tollman*, 124 Mass., 254; *Furnas* v. *Durgin*, 119 id., 500; *Foster* v. *Atwater*, 42 Conn., 244; *Heim* v. *Vogel*, 69 Misso., 529. "The implied contract is by novation, substituted for the contract of mortgage. The mortgage debts were a part of the consideration money and were as though new mort-mortgages had been given on the purchase." *Urquhart* v. *Brayton*, 12 R. Isl., 169. The bank was promptly notified of the assumption by Wood of the mortgage debt, and made no objection, and soon afterwards, without notice to Munson and without his knowledge, made an agreement with Wood by which it released to him a large portion of the mortgaged land. It thereby made itself a party to Wood's promise, the same as if it had brought suit against him upon it. It treated him as its debtor and put itself in relation to him as his creditor. It ignored Munson as in any way bound to it or having any interest in the mortgaged land, and looked to Wood alone as the party in interest. From this the law will imply its privity with the new contract. And the new contract being adopted by the bank, the old contract became thereby extinguished. As between the bank and Wood the extinguishment of the old contract became a consideration for Wood's personal liability on the new contract. The subsequent conduct of the bank confirms this understanding of its new relations to the parties. It looked to Wood alone for the interest on the debt, and by its notices treated the loan as

his, and had no communication whatever with Munson on the subject afterwards.

2. The law as recognized by the decisions of late years is as already stated. But before this courts of equity had maintained the doctrine that, in the case of an assumption of the debt by the purchaser of mortgaged premises, the mortgagor and purchaser stand in the relation of principal and surety, the purchaser becoming the principal debtor, and the mortgagee becoming, by subrogation, entitled to all the rights against him of the surety. *Russell* v. *Pistor*, 3 Seld., 171; *Thorp* v. *Keokuk Coal Co.*, 48 N. York, 253. If the present parties are to be regarded as in this situation, Mr. Munson became, in his relations to the bank, the surety of Wood, and the release by the bank to its principal debtor of the securities it held, without his knowledge, would discharge the surety. "If any stipulations, therefore, are made between the creditor and the debtor, which are not communicated to the surety and are inconsistent with the terms of his contract, or are prejudicial to his interests therein, they will operate as a virtual discharge of the surety from the obligation of his contract. And he may set up such conduct as a defense *to* any suit brought against him, if not at law, at all events in equity." 1 Story Eq. Jur., § 324, *et seq.;* Theobald on Surety, 119, 123; *Palmer* v. *Hendrie*, 27 Beav., 349, and 28 id., 341.

3. These defenses can be set up at law. *King* v. *Baldwin*, 2 Johns. Ch., 554; *People* v. *Jansen*, 7 Johns., 332.

PARDEE, J. The two suits before us are an action at law by the Townsend Savings Bank against L. E. Munson upon the promissory note of the latter, and a petition for an injunction against the prosecution of the suit by Munson against the savings bank. Upon the facts found by the court below Munson claims that the savings bank accepted one Wood as its debtor in his place, and thereby released him from his liability on the note, and that if this be not so, he is released from his obligation by the act of the savings bank in quitclaiming to Wood a large part of the real estate security

which he had given it in the first instance and which he had conveyed to Wood subject to the mortgage to the savings bank.

But, as to the first point, it is found that the bank did not in terms agree to release Munson.

His arrangement with Wood did not of its own force substitute the latter for himself as the debtor to the bank contrary to its will; nor are the reception of interest from and the quit-claim to Wood in legal effect equivalent to a contract by it to make a substitution; therefore we cannot impute such contract to it. These acts are quite consistent with the retention of its hold upon himself both in deed and in intent; they import no more than its willingness to receive interest from Wood if he tendered it.

The value of the land mortgaged by Munson to the savings bank is found to have been, at the time of the hearing, from three to four dollars per front foot. Assuming three and one-half dollars to be a fair valuation, the bank holding eighteen hundred and forty-three feet had full security for Munson's note, amounting at this present to about $3,500. It released fifteen hundred and thirteen feet to Wood, retaining three hundred and thirty feet, worth at the price affixed to it in the finding $1,155; and has brought an action against Munson for the unsecured balance of his note; urging as grounds for recovery, first, that by joining Mrs. Munson in the execution of a quit-claim to Wood of a certain portion of the land previously quit-claimed to him by the bank there resulted the payment by Wood of $4,250 upon his note to Mrs. Munson; second, that as a consequence of the quit-claim by the bank Mrs. Munson's mortgage advanced from the second to the first rank upon the portion of land thus released. But, first, these reasons proceed upon an assumption which has no fact underlying it. There is no finding that Munson is the owner of the sum represented by Wood's note to Mrs. Munson; second, conceding that he is, the claimed conclusion does not follow.

If the bank had retained under mortgage the entire piece of land it would have paid Munson's note in full, together

with about $3,000 upon Wood's note to Mrs. Munson. Thus Munson would have had the benefit of the entire piece of land.

If Mr. and Mrs. Munson had not supplemented the quit-claim from the bank by one from themselves the land would have paid $1,155 upon his note to it, and about $5,300 upon Wood's note to Mrs. Munson; and he would, as upon the former supposition, have had the benefit of the entire piece, and no more. That which would have been added to the security for Mrs. Munson's note would have been taken from that for his own. Therefore the quit-claim by the bank, of itself, without reference to the subsequent transactions between Mr. and Mrs. Munson and Wood, gave no additional strength to Munson's position.

Again, Munson having mortgaged land to the bank of sufficient value to pay his note, and having conveyed the equity to Wood upon the assumption by him of payment of that note, there remained to Munson the right to have both the note and Wood's agreement to pay it protected by that security. If the bank compels him to pay the note, it must restore the security to him; unless it is able to do this it must content itself with the proceeds of the land retained.

This rule of law is not suspended in favor of the bank by reason of the payment of $4,250 by Wood upon his note to Mrs. Munson in consideration of the quit-claim from Mr. and Mrs. Munson to him. For, the bank assumed the entire responsibility for the quit-claim by itself to Wood of a part of the land mortgaged to it by Munson; the act was without his consent or knowledge even; upon knowledge, he was under no obligation to protest; being a fact accomplished, presumably protest would have been unavailing. Finding Wood in possession of the quit-claim from the bank it was Munson's privilege to sell to him a supplemental quit-claim for the best price to be obtained for it, without accountability to the bank. The savings bank was not affected by the release. It was not a release from their mortgage; that was already released. It was a release only from the mortgage to Mrs. Munson. The two releases are independent transactions; they have no legal connection. The gain or loss from Munson's act results

wholly to himself; the bank can neither claim a share in the one nor be made to bear any part of the other.

We leave out of consideration the fact that the bank through mistake included in the release to Wood the two lots previously sold by Munson to Lynch and Ellis respectively, for Wood released them from the incumbrance; and, if the bank had not quit-claimed to Wood the land would have paid Munson's note and that would have released them.  The quit-claim by the bank of these two lots formed no part of the consideration for which Wood made the payment of $4,250 upon his note to Mrs. Munson, for he did not know until after he had made the payment that these lots were included.  It is not therefore made certain by the finding that either party can claim anything as against the other upon this part of the transaction.

The Superior Court is advised to render judgment for the defendant in the action at law, and to make permanent the temporary injunction granted upon the bill in equity.

In this opinion the other judges concurred.