[Sac. 288. In Bank.—December 15, 1897.]

## O. J. WOODWARD, Respondent, v. JOHN BROWN et al., Appellants.

FORECLOSURE OF MORTGAGE—CONDITIONAL LIABILITY OF MORTGAGOR—RELEASE OF PART OF SECURITY FOR LESS THAN VALUE—DEFICIENCY.—The mortgaged premises constitute the primary fund out of which the mortgage debt must be paid, and the liability of the mortgagor is contingent on a sale of the mortgaged premises under foreclosure and an application of the proceeds to the debt and costs, and the deficiency which the code directs may take the form of a personal judgment is a deficiency arising from the sale of all the mortgaged premises, and not a part of it; and if the mortgagee arbitrarily releases portions of the mortgaged premises for less than their actual value, without the consent of the mortgagor, he cannot, on foreclosure, hold the mortgagor liable to a judgment for the apparent deficiency, but must credit the mortgagor with the actual value of the portions released, and if there have been no deficiency, if the mortgagee had not released any part of his security. he cannot hold the mortgagor for any deficiency.

ID.—DEED BY MORTGAGOR—PERSONAL COVENANT AGAINST ENCUMBRANCES——RELEASE TO GRANTEE.—A covenant against encumbrances, expressed or implied, in a bargain and sale deed by the mortgagor, is a personal covenant, and is not appurtenant to the land nor available to the

mortgagee; and a release given to such grantee by the mortgagee, without the consent of the mortgagor, for less than the value of the land released,- cannot affect the right of the mortgagor to have the value of such land applied upon the mortgage debt, as respects a deficiency judgment.

ID.—DECREE OF FORECLOSURE—SALE OF MORTGAGED LOTS IN INVERSE ORDER OF ALIENATION.—Where portions of the mortgaged premises have been alienated by the mortgagor, the decree of foreclosure must order a sale of the premises, subject to the mortgage, in the inverse order of their alienation.

ID.—EFFECT OF PARTIAL RELEASES BY MORTGAGEE—RIGHTS OF PURCHASER OF LOTS NOT RELEASED—NOTICE TO MORTGAGEE.—The record of conveyances by the mortgagor to purchasers of lots from him, which are not released from the mortgage security, is not constructive notice to the prior. mortgagee of such conveyances or of any subsequent conveyances by them to other grantees, and if he has no actual knowledge thereof, he is not prevented thereby from dealing in any manner with the mortgaged premises, and he may release other lots from the mortgage without liability to such purchasers or their grantees, or any impairment of his remaining security upon the mortgaged premises; and the most that can be claimed by them is that the sale should proceed in the proper order of alienation of lots remaining subject to the mortgage.

ID.—POWER OF PARTIAL RELEASE—REGISTRY—NOTICE.—A mortgagee has power to give partial releases from the operation of the mortgage of portions of the mortgaged premises, without, in any manner, affecting. or discharging his security upon the remainder of the premises; and the registry of such partial releases is sufficient to impart notice to any person dealing with the property, whether noted upon the margin of the record of the mortgage or embodied in separate instruments duly acknowledged and recorded.

ID.—CONSTRUCTION OF PARTIAL RELEASE—LIMITATION OF GENERAL WORDS OF SATISFACTION.—A partial release of particular lots from the operation of a mortgage of a larger tract, for a small consideration expressed in the release, will not be construed to operate as an entire satisfaction of the mortgage debt, on account of the use of general words of satisfaction therein, but such words will be construed as limited and not to be extended in effect beyond the evident intention of the mortgagee; nor can purchasers of mortgage lots who took prior to such release be misled by its terms.

ID.—AGREEMENT FOR RELEASE FROM MORTGAGEE—PRIOR ASSIGNMENT OF MORTGAGE—REGISTRY—NOTICE OF ASSIGNMENT.—An agreement made with the mortgagee that he would release lots previously sold from the operation of the mortgage, and would hold the purchaser harmless and secure in the title to the lots, made long after the purchase and deed of the lots, and still longer after the assignment of the mortgage to the plaintiff, cannot bind the plaintiff without proof of his knowledge and consent thereto; and the registry of the assignment of the mortgage is part of the record title of which a purchaser from the mortgagor must take notice.

ID.—CONFLICTING DEEDS—RELEASE FROM MORTGAGE—KNOWLEDGE OF MORT-
GAGOR—PRIORITY OF DELIVERY—BURDEN OF PROOF—PRESUMPTIONS—
CREDIT OF VALUE OF LOTS RELEASED.—Where a grantee of the mortgagor
executed two deeds of the same date to different grantees, one of
which conveyed two lots to one grantee, and the other conveyed the
same lots and the residue of the mortgaged property to the other ;
grantee, and the mortgagee, with knowledge of both grants, ·re-
leased the two lots to the special grantee thereof, whose deed was
first recorded, and his prior right to the lots was recognized in the
decree of foreclosure of the mortgage, the burden of proof· is on the
defendants claiming under the other deed to prove its prior delivery,
and, in the absence of such proof, it is to be presumed in support
of the judgment that the deed first recorded was first delivered;
but this presumption does not apply as respects the additional
mortgaged property included in the other deed, which must be held
to have taken effect as to that property of its date, and prior. in
time to the special deed of the two lots, which could not be ·re-
leased as against the owners of the other lots, without crediting
their full value upon the mortgage debt.

ID.—APPORTIONMENT OF VALUE OF LOTS RELEASED.—The value of the lots re-
leased cannot be apportioned so as to be credited wholly to a por-
tion of the other lots included in the mortgage which belong to the
defendants appealing, but the nonappealing defendants owning the
residue of such lots must share in the benefits of the credit. ·

ID.—INVERSE ORDER OF ALIENATION—SHERIFF'S DEED—RELATION TO LIEN OF
ATTACHMENT.—In determining the inverse order of alienation of mort-
gaged lots sold by the mortgagor, a sheriff's deed must be deemed
to relate to the lien of an attachment upon the lots sold; and it is
error to order such lots sold under the decree of foreclosure prior
to lots conveyed intermediate the attachment and the sheriff's
deed.

ID.—LOT CONVEYED TO PERSON NOT A PARTY.—It is error to order a mortgaged
lot to be sold under the decree of foreclosure, which prior to the
commencement of the action had been sold and conveyed to a per-
son not a party to the suit, unless it is made to appear that prior
thereto such person had sold it to a person who was made a defend-
ant.

ID.—IMPROPER ORDER OF SALES—LANDS OF PARTY NOT APPEALING—RIGHTS OF
APPELLANTS.—A party not appealing cannot complain of the order in
which the sale of mortgaged lots is to be made; but the sale of the
lands of such party which remain subject to the mortgage must,
with reference to other defendants appealing, be made with a due
regard for their equities.

ID.—RIGHT OF PLAINTIFF TO SUE—FINDING—EVIDENCE—ASSIGNMENTS—RE-
CITALS.—A finding that plaintiff was the owner and holder of the notes
and mortgage when the action was brought substantially finds on
the issue raised by the answer that plaintiff was not the real party
in interest and had no right to prosecute the action, and the find-
ing is sufficiently sustained by evidence of an assignment made to

plaintiff, though he was at the time acting for a bank of which he was president, and testimony by him that he finally bought them outright; and his title as owner and holder cannot be defeated by recitals in a subsequent assignment from the assignor to another assignee to the effect that the notes and mortgage were held by plaintiff and the bank as security for indebtedness to them.

ID.—RIGHT OF COLLECTION—IMMATERIAL EVIDENCE—AMOUNT PAID FOR AS-SIGNMENT—TIME OF ACQUISITION OF TITLE.—For the purpose of bringing the action, it would be sufficient if plaintiff held an assignment of the notes and mortgage merely for collection, and questions put to him as to the amount paid by him for the mortgage, and whether there was anything owing to the bank of which he had been pres-ident, of which he testified that he bought the mortgage, and as to when he acquired the absolute title, were properly disallowed as immaterial.

ID.—NOTES PAYABLE AT DIFFERENT TIMES—OPTION AS TO MATURITY—BRING-ING OF ACTION—APPLICATION OF PAYMENTS—IMMATERIAL APPLICATION TO LAST NOTE.—The bringing of an action upon a note not mature upon its face operates as an exercise of an option given in the note to regard it as due for nonpayment of interest thereon; and where three notes were given, payable at different times, and the first was paid in full at maturity, and the second was past due when suit was brought thereon, and the last was payable *in futuro*, but subject to the option to regard it as due for nonpayment of interest, and each bore the same rate of interest, the fact that some of the pay-ments received by the plaintiff were applied upon the third note instead of the second is immaterial, it appearing that, if all the payments made after payment of the first note had been indorsed upon the second note, there would still be an unpaid balance on the second note and unpaid interest on both notes when the action was brought.

ID.—ALLOWANCE OF ATTORNEY'S FEES.—Where the mortgage provides for a reasonable counsel fee to be fixed by the court in case of foreclo-sure, the duty of fixing the amount of compensation is cast upon the court, and no evidence of value of the services is necessary.

ID.—MOTION FOR NEW TRIAL—EXPURGATED AFFIDAVIT—HARMLESS RULING.—An order striking out an affidavit on motion for new trial is harm-less where the matters contained in it were mainly recitals of what appeared in the record, and it was not in support of the ground of newly-discovered evidence, and was more in the nature of an argument on the motion than the presentation of any new fact of which the court could take notice.

ID.—SUMMONS—AFFIDAVIT FOR PUBLICATION—RETURN OF SHERIFF NOT RE-QUIRED.—Where the complaint states a good cause of action, an affidavit for the publication of summons which gives the names of the de-fendants, and states that they reside out of the state, names the state in which each resides, and refers to the verified complaint and makes it a part of the affidavit, and states that the defendants are proper and necessary parties to the action, and that affiant has

a good cause of action against the defendants, as he is advised by his counsel and verily believes, is not defective, and need not state that the sheriff had returned the summons, and it is not material whether the summons had been returned when the affidavit was made.

ID.—PROOF OF PUBLICATION—AFFIDAVIT OF PUBLISHER AND PROPRIETOR.—An affidavit proving publication of the summons may be sworn to by the publisher and proprietor of the paper in which it was published, such "proprietor" being in the sense of the statute synonymous with "printer"; and where such affidavit states that the summons was published weekly in a paper named, which was a daily and weekly newspaper, in each and every one of the consecutive weekly issues of said newspaper, and the time of publication stated covered twenty weekly insertions, and a period of seventy days, the affidavit shows a sufficient length of publication, and that the publication was once a week.

ID.—AFFIDAVIT OF SERVICE—EX PARTE AMENDMENT NUNC PRO TUNC.—An affidavit of the personal service of summons may be amended by leave of the court after judgment, to supply *nunc pro tunc* the statement omitted by inadvertence that affiant was over the age of eighteen years when he made the affidavit; and though the practice of allowing such an amendment to be made without notice is not to be commended, yet where it was allowed *ex parte*, and the defendants had subsequent notice and full opportunity to take steps to have the truth of the matter ascertained, and did not ask to have the order vacated for any reason, or controvert any fact stated therein, the *ex parte* order allowing the amendment, and directing that the amended affidavit be made part of the judgment roll, will not be disturbed upon appeal.

ID.—AMENDMENT OF COMPLAINT AFTER PUBLICATION OF SUMMONS—MATTER NOT OF SUBSTANCE.—An amendment of the complaint in matter of form after the publication of summons, merely setting out the indorsements of payments on the notes, in the nature of a bill of particulars from which it could be ascertained what appeared in the complaint, does not come within the rule that an amendment in matter of substance after default opens up the default, and such amendment does not require republication of the summons nor service upon absent defendants.

APPEAL from a judgment of the Superior Court of Madera County and from an order denying a new trial.    W. M. Conley, Judge.

The facts are stated in the opinions.

Robert L. Hargrove, for Appellants.

George E. Church, and George B. Graham, for Respondent.

THE COURT.—A petition for hearing in Bank having been granted, upon further consideration it appears that on January 20, 1892, McDonald conveyed to John Brown Colony, a corporation, and to D. S. Dorn blocks 51 and 60. On that day the title still remained in Brown. The Dorn deed was recorded January 23d, while the John Brown Colony deed was recorded January 26th. On January 25, 1892, Brown conveyed these same blocks to McDonald, the title thus inuring to Dorn, who first recorded his deed. The presumption of law relating to blocks 51 and 60 was correctly applied in holding in the former opinion that the Dorn deed was first delivered. But it does not apply to the John Brown Colony deed as respects the other blocks and lots conveyed to that corporation. As to them, that deed must take date of January 20th, and therefore prior to the Dorn deed, and the Dorn block could not be released without crediting their full value upon the mortgage debt, as the mortgagee had actual knowledge of the John Brown Colony deed. The value of these blocks was found to be $8,000. The mortgagee did in fact credit the mortgage debt with $5,000 on account of the sale to Dorn, so that there remains to be credited the further sum of $3,000, which should be done as of the date of the release of the Dorn blocks, March 1, 1892. We see no way to apportion this amount so as to exonerate the lots owned by the appealing defendants alone in the ratio that their lots bear to the whole number of lots sold by the John Brown Colony; nor do we see any way by which any principle of apportionment could be applied upon any basis of values. As the case stands, it is the fortune of the nonappealing defendants to share the benefits of this credit, as it would have been their misfortune had the dates of the conveyances to John Brown Colony and to Dorn been different.

In the matter of the petition by plaintiff for a modification of the opinion directing that Cecil Ricketts be made a party defendant, the petition will be granted in so far that should it appear that Ricketts had sold his lot prior to the commencement of the action to a person who was made a defendant, the direction heretofore given may be disregarded.

Wherefore, it is ordered and adjudged by this court in Bank that the judgment heretofore rendered in Department be modi-

fied in the foregoing particulars, and that the judgment as modified stand approved.

BEATTY, C. J., concurring.—I concur in the judgment and in the opinion of Commissioner Chipman, as modified, upon all points but one. I dissent from the order striking out the deficiency judgment against Brown and from the reasoning upon which it is based. I agree to the general proposition that the mortgagee cannot release the mortgage in whole or in part without the consent of the mortgagor, and upon a full release hold the mortgagor to a personal liability, or upon a partial release claim a deficiency judgment greater than would have resulted if no part of the mortgaged property had been released. But when a mortgagor conveys the whole or a part of the mortgaged premises to a third party by a deed containing an express or implied warranty that the premises are free from encumbrances created or suffered by him, and the mortgagee releases to the grantee of the mortgagor, I think the consent of the mortgagor to the release should not only be presumed, but he should not be heard to allege that the release was without his consent.

The moment he makes such a conveyance his covenant is broken and he becomes bound to his grantee to have the mortgage released. If the mortgagee will consent to the release, he cannot refuse to do what he is under a legal and moral obligation to do. Suppose, in such a case, the mortgagee should offer to release upon condition that the mortgagor would give his written consent, and the mortgagor should refuse, would not a court of equity compel him to consent? And if he would be compelled to consent where the mortgagee made that the condition of release, why should he be allowed to say he did not consent when the mortgagee has released without conditions? In the eyes of equity what ought to be done is done.

And how, upon this theory of the law, is the mortgagor injured? His grant, bargain, and sale deed implies that he has been paid or secured the full unencumbered value of the land he has sold, and, if there results from the release a larger deficiency judgment against him, he has the money derived from the land itself to pay the difference.

Henshaw, J., concurred.

The following is the opinion above referred to rendered in Department Two, November 1, 1897:

CHIPMAN, C.—This is an action to foreclose a certain mortgage executed by John Brown, one of the defendants, to Thomas E. Hughes, another defendant, on September 28, 1889, to secure certain three promissory notes of even date with the mortgage, executed by Brown to Hughes, which said notes and mortgage were, on May 1, 1891, before maturity, assigned to plaintiff. The property mortgaged consisted of certain lots and blocks of Hughes' addition to the town of Madera, situated at the time in Fresno county, now Madera county, about one thousand lots in all, many of which afterward fell into the ownership of divers persons who were made defendants as claiming some interest therein. Default was entered as to certain seventeen of the defendants, and certain five of the defendants, viz., Bank of Madera, Annie Lazar, John Brown, A. J. Etter, and N. Rosenthal, appeal. The pleadings cover five hundred folios, and present an exceedingly complicated array of facts out of which the issues arise.

It appears that mortgagor Brown conveyed block 65 March 17, 1891, before the assignment to plaintiff, and mortgagee Hughes released the same to Brown, consideration for sale being $3,000, and for the release $1,000. Brown also conveyed the east half of block 59 September 4, 1891, and the west half of block 59 October 8, 1891. This block was released by plaintiff September 4, 1891, consideration not shown. Brown also conveyed blocks 51 and 60 to McDonald, trustee, by deed dated January 20, 1892, and McDonald, by deed of same date, conveyed the same lots to one Dorn, consideration mentioned, $10; released by plaintiff February 23, 1892, for consideration of $5,000. All the remaining mortgaged premises were conveyed by Brown to McDonald, trustee, October 8, 1891, by grant deed; consideration stated was $10. McDonald conveyed by grant deed to John Brown Colony, a corporation, January 20, 1892, the lots described in his deed of October 8, 1891, consideration mentioned, $10. The colony corporation commenced selling lots January 21, 1892, and disposed of quite a number up to January 19, 1893, when it conveyed the remaining lots and blocks, still a large number, to the Madera Fruit and Land Company, a cor-

poration. This latter corporation sold several of the lots, when, on June 2, 1893, the remainder were attached at the suit of Bank of Madera, and it received sheriff's deed to the property of date March 12, 1895. Etter's deed is from John Brown Colony, dated February 23, 1892. Lazar's deed is from Madera Fruit and Land Company, dated May 27, 1893. Rosenthal's deed is from same company, and is dated June 3, 1893. Other facts will appear in connection with the various points raised by counsel.

As conclusions of law, the court found that plaintiff was entitled to the decree of the court for the sale of the premises not released and in the inverse order of the several conveyances thereof, and for deficiency judgment against Brown.

The decree was entered accordingly. The appeal is from the decree and from the order denying motion for new trial, and from the order made May 9, 1896, striking out the affidavit of Robert L. Hargrove, served and filed in support of said motion for new trial.

1. The first question presented is as to the rights of the mortgagor Brown. It is claimed by him that under section 726 of the Code of Civil Procedure, and the decisions of this court touching that section, the mortgaged premises constitute the primary fund out of which the mortgage debt must be paid, and that the mortgagee cannot arbitrarily release portions of that fund for less than their actual value without the consent of the mortgagor, and, if he does so, he must on foreclosure credit the mortgage with the value of the portions released. (Citing *Bartlett v. Cottle*, 63 Cal. 366; *Porter v. Muller*, 65 Cal. 512; *Bull v. Coe*, 77 Cal. 54; 11 Am. St. Rep. 235; *Barbieri v. Ramelli*, 84 Cal. 154.)

Respondent treats this point as of little consequence and makes but a mere passing allusion to it. Section 726 of the Code of Civil Procedure provides: "There can be but one action for the recovery of any debt or the enforcement of any right secured by mortgage upon real estate or personal property, which action must be in accordance with the provisions of this chapter. In such action, the court may by its judgment direct a sale of the encumbered property . . . . and the application of the proceeds of the sale to the payment of the costs of the

court and the expenses of the sale, and the amount due to the plaintiff; and if it appears from the sheriff's return that the proceeds are insufficient and a balance still remains due, judgment can then be docketed for such balance against the defendant or defendants personally liable for the debt," etc.

The question presented is, not whether the mortgagee may release a portion of the property and look only to the residue, or may foreclose upon a part only and waive his security as to the residue, which he may do; but it is whether he may do this without the consent of the mortgagor and have a judgment docketed for a deficiency.

We cannot perceive upon what principle of equity or by what construction of this section it can be held that the mortgagee may, without the consent of the mortgagor, let go part of his security to a purchaser from the mortgagor, at less than its value it may be, and then look to the mortgagor to make up the deficiency. It would be a gross injustice to the mortgagor to hold him liable for a deficiency which the mortgagee has, without the mortgagor's authority or consent, created. The deficiency which the code directs may take the form of a personal judgment is a deficiency arising from the sale of all the mortgaged security, and not a part of it. (Jones on Mortgages, sec. 678 a; *Worcester Sav. Bank v. Thayer*, 136 Mass. 459; *Townsend Sav. Bank v. Munson*, 47 Conn. 390.)

The danger to the interests and rights of the mortgagor will at once be seen by supposing a not improbable case and one much like the one before us. The mortgagee, for reasons of his own, releases one after another of the mortgaged lots without consideration therefor or for a small consideration, thinking that he has retained enough out of which to realize on sale the amount of the debt. It turns out, through depreciation of values or other cause, that he miscalculated the value of his retained security and there was a deficiency after sale. Now there would have been no deficiency if he had not released a portion of his security. It would be clearly inequitable to hold the mortgagor in such case for any deficiency.

In *Porter v. Muller, supra*, it was held that the proceeds of the sale of the mortgaged premises constitute the primary fund out of which the mortgaged debt must be paid. In *Biddell v.*

*Brizzolara,* 64 Cal. 354, it was said: "Whatever the form of the debt, the mortgagor can be legally compelled to pay no part of it until decree is entered for the sale of the premises mortgaged, and the liability which shall then accrue to him is a liability to pay only a deficiency which shall appear on the sheriff's return. The liability of the mortgagor is therefore contingent on the fact that a sale of the mortgaged premises shall satisfy the debt and costs." In *Toby v. Oregon etc. R. R. Co.,* 98 Cal. 490, the language is: "The mortgagee must exhaust the property."

In *Brown v. Willis,* 67 Cal. 235, it was held that "a mortgagor cannot be compelled to pay any part of his mortgage debt until a decree is entered for a sale of the premises mortgaged." But if the mortgagee should release a part, he places himself in a position where he cannot sell all the premises. It is well settled that no deficiency can be entered up where a partial foreclosure takes place; it can only be done upon final sale of all the property. So long as any of the mortgaged premises remains unsold there can be no deficiency. (*Bull v. Coe, supra.* See, also, *Hall v. Arnott,* 80 Cal. 348.)

In *Blumberg v. Birch,* 99 Cal. 416, 37 Am. St. Rep. 67, it was held that, after sale of the mortgaged premises and there remaining a deficiency, action would lie to recover the amount, although the deficiency judgment was void; but this was upon the assumption that the mortgage security had been exhausted by the foreclosure sale.

In *Barbieri v. Ramelli, supra,* it was held that the mortgagee "was not authorized to waive the security and bring an action on the indebtedness, and the court erred in so holding, as it did in effect, and rendering judgment for plaintiff."

It seems to us that to allow the release of part of the security and to provide for a deficiency judgment, as was done in the case before us, would be a violation of the underlying principle of the case last cited, for the mortgagee would thus get a judgment which could be enforced against the mortgagor precisely as if the mortgagee had first waived his security and brought suit on the notes. If he can release part of the security, he can release all, and thus defeat the purpose of the law, which is to confine the mortgagee to the one action and to his security as

a primary fund. If it be said that, while he cannot waive all the security and then bring an action at law, he may waive part and foreclose on the residue and have his deficiency judgment, the answer is that the law will not allow him to accomplish indirectly what he cannot do directly.

Numerous cases are cited in Jones on Mortgages, sections 722 and 981, to the effect that, as between the mortgagor and the mortgagee, the latter may release any portion of the mortgaged premises without affecting the lien upon the residue. But the cases cited by the learned author do not deal with the rights of the mortgagee to a deficiency judgment where he releases without the consent of the mortgagor, nor does it appear in those cases that the statute was as it is here. They deal with the mortgagee's right to foreclose on the unsold portion still in the hands of the mortgagor. Under our statute, on foreclosure, the land becomes the principal debtor and the mortgagor the surety, and his rights as surety should be preserved.

It may be that, in those jurisdictions where an action is given on the debt as well as on the security, the mortgagee may release regardless of the mortgagor's rights, or may proceed regardless of the security, but in this state the law gives him but one action, and he should be confined to that, at least to the extent of requiring him first to exhaust his security before obtaining other relief. If he desires to release a part of his security, and still hold the mortgagee for any deficiency after foreclosure, he must obtain the mortgagor's consent, or see to it that in releasing he is paid full value and gives the mortgagor credit therefor.

The form of deed from Brown to McDonald cannot affect the question. By it Brown's covenant was that the land was free from encumbrance, but this covenant was not such as is appurtenant to and runs with the land, under sections 1113 and 1460 of the Civil Code. It was a personal covenant. (*Lawrence v. Montgomery*, 37 Cal. 183, and cases there cited.) If the mortgage had been foreclosed upon all the property while Brown held the title, Brown would, of course, in any event, have been liable for a deficiency, and McDonald would have had his action against Brown upon the covenant. The right of the mortgagee to a deficiency judgment, however, would not arise from the

form of McDonald's deed, but from the mortgage and the statute, and from the fact that the mortgagee had not by his own act impaired his security in any manner. If he had released all of the lots but one to McDonald, without the knowledge or consent of the mortgagor, it would be unconscionable to hold that he could foreclose on the remaining lot and have his deficiency judgment against the mortgagor. The same reasoning already stated as to the effect of the releases given by the mortgagee to various subsequent purchasers from McDonald and their grantees would apply. The covenant of the mortgagor in his deed to McDonald is not available to the mortgagee, and is wholly unnecessary for his security; nor can it in any way give to the mortgagee upon foreclosure the right to a deficiency. It is unnecessary, because the mortgagee himself has a right to a deficiency judgment when his security is exhausted, and the covenant of the mortgagor in his deed would, if available to the mortgagee, give him no better remedy.

It was stipulated that the lots were of the market value of $125 each. The plaintiff testified that it was the understanding with some of the parties, but with whom does not clearly appear, that he, plaintiff, would release for $25 per lot; but later along, when the defendants opened their testimony, some stipulations were entered into by the respective counsel, and, among others, "it was stipulated that John Brown never consented to the release of any pieces of property from the mortgage." We think this stipulation is controlling as to the fact agreed upon by it.

The plaintiff testified that "there were three hundred and forty-seven lots released at $25 a lot." It also appeared that he released block 49 (in which there were twenty-eight lots) to the Madera School District without any payment. A simple mathematical calculation will show that these lots were released for several thousand dollars less than their agreed market value. If they had not been released, but had been included in the foreclosure proceedings, by no reasonable probability would there be any deficiency upon foreclosure. The decree, so far as it directs a deficiency to be entered against Brown, is erroneous, and should therefore be modified.

2. The next question presented is whether the court erred in

directing the sale of the lots in the inverse order of their aliena-
tion. We do not understand from appellant's brief that the
correctness of the rule is questioned in a case like the present
one. There can be no doubt but that this is the rule in this
state. (Civ. Code, secs. 2899, 3433. See, also, *Kent v. Will-
iams,* 114 Cal. 537.) But, as we understand appellants' posi-
tion, it is that the rule requiring sale in the inverse order of
alienation was, in certain cases involved, changed by the act of
the mortgagee, and this contention will next be noticed.

3. The question most discussed by appellants is as to the
equities of subsequent purchasers as they are affected by the re-
leases made by the plaintiff of certain of the mortgaged lots,
which had been sold by the mortgagor after plaintiff acquired
the mortgage, and were resold by the mortgagor's grantee and
again and again resold by subsequent grantees. A large num-
ber of cases are cited by appellants illustrating the rights of pur-
chasers from the mortgagor and their grantees as affected by re-
leases made by the mortgagee. But none of them will be found
to hold that the mortgagee may not release without liability to
him or impairment of his remaining security, where he does so
without actual knowledge of the conveyance. As his mortgage
is a lien, and creates an encumbrance alike upon all parts of
the land subject to it, no subsequent change in the ownership
of the mortgaged premises of which he is ignorant can in any
degree limit his original rights conferred by the security. The
record of subsequent conveyances is not a constructive notice to
the prior mortgagee, so as to prevent him from dealing in any
manner with the mortgaged premises; he must have actual no-
tice.

The cases supporting the foregoing are numerous and will be
found cited in 2 Pomeroy's Equity Jurisprudence, secs. 656,
657; 3 Pomeroy's Equity Jurisprudence, secs. 1224-26; 2 Jones
on Mortgages, secs. 1621-24; 1 Jones on Mortgages, secs. 722,
723. As to the rights of the mortgagor, who had conveyed all
the mortgaged premises, they are in no wise affected by these
releases, except as to the single question of plaintiff's right to a
deficiency judgment, and this has already been disposed of. The
only other defendants appealing are Etter, Rosenthal, Lazar,
and Bank of Madera, and, as to them, it follows that unless

plaintiff had notice of their deeds his releases to certain other purchasers, whether given before or after defendants' deeds, afford them no ground of complaint, and the utmost that can be claimed by them is that the foreclosure sale should proceed in the proper order.

The court found that plaintiff had no notice or knowledge of defendants' deeds, and, the evidence upon that point being in conflict, this finding cannot be disturbed. It may be said that, inasmuch as Brown's deed to McDonald implied a covenant of warranty that no encumbrance rested on the premises, an equity thus attached in favor of McDonald which passed to his grantees and purchasers from or through them.

But the covenant in Brown's deed to McDonald was personal between him and Brown, and was not a covenant running with the land, and impressed it with no such equity as would pass with the land conveyed by McDonald or his grantee. McDonald, by his grant deed, covenanted against his own acts in creating encumbrances, but not against those of his grantor, the mortgagor. McDonald's grantee took the land subject to the Brown mortgage without any agreement, express or implied, that McDonald would pay the mortgage debt; nor did McDonald's deed operate as an assignment to his grantee of the right of action which McDonald had against Brown on the implied covenant. (*Lawrence v. Montgomery, supra.*)

4. Defendants make the point that there is no provision in our code for partial or other releases; that the only provision relates to a full satisfaction, and that the partial satisfactions or releases operated to discharge the mortgage lien. (Citing Civ. Code, sec. 2938.) We do not think there can be any doubt but that partial releases are authorized by this and subsequent sections. Whether so or not, the universal practice of making partial releases, and their obvious convenience and importance to all persons having any interest in the mortgaged premises, would warrant us in upholding and limiting them to the purpose expressed in making them. It certainly cannot be claimed that if a partial release is unauthorized that when made it would nevertheless operate to discharge the whole mortgage lien.

The section referred to does not provide in terms for partial satisfactions on the margin of the mortgage record or otherwise,

but as the partial releases in this case were either upon the margin of the record of the mortgage or in separate instruments duly acknowledged and recorded, we think this would impart notice or be sufficient to put a person dealing with the mortgaged property upon inquiry, which, if pursued, would easily lead to the discovery of the fact.

Defendants claim that there was one particular release made by plaintiff which had the effect to completely satisfy and discharge the mortgage. It is as follows:

"O. J. Woodward, Assignee, to John Brown.

"Dated November 11, 1893.

"Consideration $50.

"That the following land situate in county of Madera, state of California, described as follows, to wit, lots 6 and 7 in block 67 of Hughes' addition to the town of Madera . . . . hereby released from the lien of the mortgage, made by John Brown Colony to Thomas E. Hughes, and recorded, etc., . . . . together with the debt thereby secured, is fully paid, satisfied and discharged.        "(Signed)    O. J. WOODWARD,

"Assignee.

"Acknowledged in due form Nov. 11, 1893, and duly recorded."

That portion of this document reading "together with the debt thereby secured, is fully paid, satisfied, and discharged," does not appear as part of the record evidence. At folio 793 it appears as defendants' exhibit 37 without the paragraph above quoted. In an affidavit made by one of defendants' attorneys, sworn to March 5, 1896, and served on plaintiff's attorney March 7th and filed March 10, 1896, this release is set out with the paragraph above quoted contained in it, and this alleged new matter, among other things, is stated in support of the motion for a new trial. The notice of this motion was served and filed February 29, 1896, and stated, among other things, that the motion would be heard "upon affidavits hereafter to be served." At the hearing, May 9, 1896, this affidavit was, on motion of plaintiff's counsel, stricken from the records, to which defendants' counsel excepted. I think it evident from the release itself, in whichever form it is to be considered, that it was not the inten-

tion of the mortgagee thereby to release the entire debt, and that it should not be extended beyond its intention. The consideration paid for the release was $50, and this was indorsed on one of the notes the same day as follows: "Nov. 11, 1893, lots 6 and 7, block 67, $50," and on the mortgage was indorsed the following: "Nov. 11, '93, lots 6 and 7, block 67 (release sent to Madera)." Defendants were not misled by it, for it was not made until after they had purchased. The case of *Beal v. Stevens*, 72 Cal. 451, cited by defendants, in no wise conflicts with this view.

5. There were other matters set forth in this expurgated affidavit, and defendants claim error in striking it out as to these matters as well. It is quite lengthy, and need not be set forth in this opinion.

This affidavit is before us as part of the bill of exceptions. It was filed on March 10, 1896, and the motion for a new trial came up on May 9th following. The matters contained in it were mainly recitals of what appeared in the record, and were more in the nature of an argument on the motion than the presentation of any new fact of which the court could take notice. It was not presented by way of suggesting diminution of the record, nor was it in support of the ground of newly discovered evidence, for that was not made a ground in the motion. All the points presented in the affidavit are made in the briefs of counsel for the defendants, and do not require its aid for their full determination which is given them in this opinion. I cannot see that they were prejudiced by striking it out.

6. Defendants assign as error that the court allowed the affidavit of personal service of summons on certain defendants made September 15, 1894, to be amended and filed September 15, 1896, *nunc pro tunc*. The particular in which the amendment was made was in stating that affiant was, at the time he served the summons, over the age of eighteen years, which by inadvertence he omitted to state. The objection made was, that the court could not, after judgment entered, allow the affidavit to be amended, and that the defaults entered were unauthorized. The order was *ex parte* and directed that the amended affidavit be made part of the judgment-roll. In *Herman v. Santee*, 103 Cal. 519, 42 Am. St. Rep. 145, it was held that this might be

done, but in that case opposing counsel was present in court and had a hearing on the motion, although not previously notified. I cannot see, however, but that the reasoning in that case and the authorities cited in it would allow such an amendment *ex parte,* and without notice, although such practice is not to be commended. In such event the party claiming to be injured could afterward appear and move to set aside and vacate the order, and such a motion should be granted upon a showing that the amendment was not true in fact. Whether, however, the motion here was of such character as to require previous notice need not be determined, for defendants had subsequent notice and full opportunity to take steps to have the truth of the matter ascertained and cause the order to be vacated if erroneously entered. They filed an affidavit calling attention to the amended affidavit, and objected to the return of the summons with the amended affidavits, claiming them to be insufficient, but did not controvert any fact stated in them, and defendants did not ask to have the order entered *nunc pro tunc* vacated for any reason.

7. Defendants assign as error that plaintiff is not the real party in interest and has no right to prosecute the action, and that this issue is raised by the pleadings, and the court did not find upon this issue. The court found that plaintiff was the owner and holder of the notes and mortgage when the action was brought, and the evidence shows he took them by written and recorded assignment May 1, 1891. There is some evidence tending to show that he originally took them while acting for the First National Bank of Fresno, of which he was president, but he testified that he finally bought them outright. The written assignment of Thomas E. Hughes (mortgagee), dated February 12, 1893, to W. M. Hughes of all his right to the notes and mortgage is in evidence, and in it he recites that the notes and mortgage are held by O. J. Woodward (plaintiff) and the First National Bank as collateral security for his indebtedness to them. It does not appear that plaintiff had knowledge of this assignment, and, even if he had, his assignor could not bind him by recitals in an assignment to another assignee. The finding is justified by the evidence, and substantially finds on the issue raised by defendants' answer.

8. Defendants claim that the affidavit for the order of publi-

cation of summons is void, as not in compliance with section
412 of the Code of Civil Procedure. The affidavit gives the
names of the defendants and states that they resided without
the state, and names the state in which each resides; it refers to
the verified complaint and makes it a part of the affidavit, and
states that the defendants are proper and necessary parties to
the action; that affiant has a good cause of action against the de-
fendants, as he is advised by his counsel and verily believes.,
The complaint states a good cause of action. It was not nec-
essary to state that the sheriff had returned the summons, and
it is immaterial whether the summons had been returned when
the affidavit was made. I see no defect in the affidavit.

9. It is further objected that the affidavit of publication is
void because it does not state that affiant was the foreman, prin-
ter, or principal clerk, and does not state that the summons was
published once a week, nor the length of time published. (Cit-
ing Code Civ. Proc., sec. 415.) The affidavit was sworn to by
the publisher and proprietor of the paper. The code, *supra,*
says the proof must be made by the "printer, or his foreman or
principal clerk." It was held under the practice act, where the
word "printer" is used, that the word "proprietor" is, in the sense
of the statute, synonymous with "printer." (*Quivey v. Porter,*
37 Cal. 458.) There is nothing in this point. The affida-
vit states that the *Madera Tribune* is a daily and weekly news-
paper, "and that the summons, of which the annexed is a
true and correct printed copy, has been published week-
ly in the said newspaper, commencing on the seventeenth day
of May, A. D. 1894, and ending on the twenty-sixth day of July,
A. D. 1894, inclusive, in each and every one of the consecutive
weekly issues of said newspaper issued during said period of
time, being the regular weekly issues thereof." Some doubt
might arise as to which one of the papers, the daily or weekly,
is referred to by the terms "said newspaper," whether the sub-
ject referred to was the daily or the weekly. The affidavit shows
further on that the paper referred to was the "regular weekly is-
sue." It does not appear on what day of the week the weekly
paper is published, but the affidavit says the publication began
on the 17th and was published weekly. The time stated would
give twenty insertions and embrace seventy days. I think the,

affidavit shows a sufficient length of time and that the publication was once a week.

9. Defendants also complain of the application made of the several payments; that they should have been credited first on the three year note, second on the four year note, and third on the five year note, and that if they had been so applied there would have been nothing due on December 19, 1893, when the action was commenced. (Citing Civ. Code, sec. 1479.)

It appears from the evidence that the first note, due in three years, to wit, on September 28, 1892, was paid in full at maturity. The second note fell due September 28, 1893, and this action was brought December 19, 1893. There is no evidence as to plaintiff's exercise of his option to regard the unpaid notes as due, which by their terms was given, except the bringing of the action. It is in evidence that no payments were made to plaintiff except such as were indorsed on the notes. When the suit was brought the second note was past due, and if all the payments made after the first note was paid had been indorsed upon the second note, instead of being indorsed partly on it and partly on the last note as was done, there would still have been an unpaid balance on the second note. The notes bore the same rate of interest, and defendants were not injured by the alleged misapplication of the payments. The last note became due on December 19, 1893, by the commencement of the action, and it was not necessary to the exercise of the option to regard it as due that previous notice should have been given to Brown or Hughes, for there was still due some unpaid interest on both notes and some unpaid principal on the second note, and, besides, the beginning of the action operated as an exercise of the option. *(Hewitt v. Dean,* 91 Cal. 5.)

10. Defendant Etter purchased from the John Brown Colony, February 23, 1892, and his lots have not been released. He sets up a defense special to himself, to wit, that Hughes, the mortgagee, on November 26, 1892, received from him $325 on lots 7, 8, 9, and 10 of block 28, and agreed to release the lots from the mortgage and "hold him harmless and secure in the title to said lots." The agreement was in writing and is in evidence. This was nine months after he had purchased and obtained a deed, and one year and seven months after the notes and the mort-

gage were assigned to plaintiff; there is no evidence that plain-
tiff received this money, or had any knowledge of its payment
to Hughes, and in his answer Etter does not allege knowledge in
plaintiff, but claims that Hughes was and is the real owner of
the mortgage, and that it was simply pledged with plaintiff to
secure payment of Hughes' indebtedness to plaintiff.  Clearly,
without proof of knowledge of this agreement or consent there-
to, implied or otherwise, by plaintiff, it cannot bind plaintiff and
is no defense.  Even if Hughes was the real owner of the mort-
gage, and plaintiff held it and the notes as security only, Hughes
could not bind plaintiff by any such agreement without his
knowledge or consent, and there is no evidence that he had any
knowledge until the answer was filed.  Section 1487 of the Civil
Code and the case of *Mahler v. Newbaur*, 32 Cal. 168, 91 Am.
Dec. 571, cited by defendants, do not conflict with this view.
Defendants cite numerous authorities, among them Jones on
Mortgages, section 479, to the effect that the record of assign-
ment of a mortgage is not constructive notice of it to the mort-
gagor so as to make invalid a payment made by him to the
mortgagee.  But that author also says in the same section that
the record of assignment of the mortgage is part of the record
title of which a purchaser of the equity of redemption must take
notice.  I do not think any case can be found holding that a
payment, by a purchaser, of part of the mortgaged premises, to
a mortgagee who had previously assigned both notes and mort-
gage, and the assignee had recorded his assignment and had
possession of the notes when payment was made, would be good
against the assignee of the mortgage who had not consented
thereto.  The cases cited are not in point.

11. A question arises as to the effect of the sale of blocks 51
and 60 by McDonald to Dorn on January 20, 1892, on which
day McDonald conveyed the residue of the mortgaged premises
(except block 65, previously sold and released) to John Brown
Colony, a corporation.  The Dorn blocks were released February
23, 1892, by plaintiff.  Brown conveyed the property to McDon-
ald October 8, 1891, by grant deed, burdened with the debt as
it stood when Brown conveyed.  It is conceded by plaintiff's
counsel that if the conveyance to John Brown Colony had been
made and delivered before the conveyance to Dorn, and plaintiff

had actual knowledge of that fact at the time he released these blocks, plaintiff would have been compelled to credit his mortgage notes with their market value in case of the parcels conveyed to John Brown Colony, which was found to be $8,000, whereas he released for a payment of $5,000. But plaintiff contends that the burden is on the defendants to show these facts, and that neither of the facts existed. The court found that plaintiff had knowledge of both of these deeds when he released these blocks. They bear the same date and were acknowledged the same day, but the Dorn deed was recorded January 23d, while the John Brown Colony deed was recorded January 26th. The $5,000 payment was credited on the notes. There is no evidence beyond the foregoing tending to show which one of these deeds in point of fact was first delivered. We think that the burden was upon defendants to show that these blocks were conveyed to Dorn after the conveyance to John Brown Colony, and, not having done so, we must presume that the evidence supported the judgment and that the colony deed followed the Dorn deed. As, therefore, the John Brown Colony lands were first liable, that corporation could not and does not complain of the release to Dorn. Brown cannot complain if no deficiency is allowed against him, and the other defendants cannot complain because their deeds were subsequent to the John Brown Colony deed, and plaintiff had no knowledge of them.

12. It is also claimed that the amended complaint was filed, after order of publication of summons, and was not served by republication of summons, nor was it served on any of the defendants, except R. H. McDonald and W. S. Chapman. *Thompson v. Johnson*, 60 Cal. 292, and section 472 of the Code of Civil Procedure are cited. It was held in *Thompson v. Johnson, supra,* that, where a plaintiff amends in matter of substance, he, in effect, opens the default on the original pleading, and must serve his amended pleading upon the parties, including the defaulting defendant.

The amendment here was not such matter of substance as would bring the case within the rule above laid down. The complaint alleged the amount due on the notes, and that plaintiff had exercised his option to regard the notes as due. The

amendment simply set out the indorsements of payments on the notes, from which it could be ascertained just what appeared in the complaint; it was somewhat in the nature of a bill of particulars. The only other allegation was as to the option, and that appeared in the original complaint. There is no merit in this point.

13. Defendants objected to pretty nearly all the evidence introduced by plaintiff, in chief, but I find no alleged error meriting notice. On cross-examination of plaintiff, when on the witness stand, he was asked how much was due on the mortgage and how much he paid for the mortgage; to the latter question plaintiff's counsel objected, and the court sustained the objection, very properly, I think. It was immaterial what he paid.

He was asked on cross-examination if there was anything owing to the First National Bank above what it paid for the mortgage. The plaintiff objected as immaterial and irrelevant, and the court refused the question. I cannot see wherein defendants were injured by this refusal. Nor, later on, when the court refused defendant's question as to whether the witness had any interest in the suit. He had testified that there was due him a certain amount on the notes, and, while the question was not an improper one, I cannot see that the answer, whatever it might have been, would change the result. For the purpose of bringing the action his possession of the notes and mortgage, even if he had held them for collection, would have been sufficient to sustain his right of action, and, later on, in answer to defendants' question, he testified that he "bought the mortgage right out."

It was also immaterial when he got absolute title, and a question as to the time was immaterial, and so also was it immaterial whether he advanced other money upon the mortgage than the amount he had testified to. The court might well have allowed more freedom of cross-examination, but it appears that the defendants were not prejudiced in their substantial rights by any restriction imposed by the court. These alleged errors are not urged in defendants' brief.

14. Defendants complain that W. E. Johns, a defendant, was a purchaser from Madera Fruit and Land Company subsequent to the Bank of Madera title; that he was not served with summons and did not appear, but that the court ordered the prop-

erty of the Madera Bank to be sold before the sale of Johns' lots. The evidence shows that Madera Fruit and Land Company sold to Johns, July 13, 1893, block 73 for $4,000, and the deed was recorded July 14, 1893. The Bank of Madera took its deed from the sheriff, dated March 12th, acknowledged April 9th, and recorded April 10, 1895. The writ in the attachment suit, under which the sale was finally made, was levied June 2d, and a copy recorded June 3, 1893, and the sheriff's deed took effect, by relation, from the levy of attachment. (*Porter v. Pico,* 55 Cal. 165; Jones on Mortgages, sec. 1623.) No question is raised as to the validity of the attachment. Jones was personally served, as shown by the affidavits of service, and his default was entered. This conveyance of the Johns' block apparently was the last one affecting the property. The order directs the sale of: 1. The lands held by the Madera Fruit and Land Company; 2. The lands of Bank of Madera; 3. The residue in the inverse order of alienation as shown by the recordation of the various deeds, to wit: (*a*) The parcels conveyed by the Madera Fruit and Land Company in the inverse order of the deeds; (*b*) The parcels conveyed by the John Brown Colony in like order; (*c*) The parcels conveyed by John Brown in like order. I find, in tabulating these various deeds and the order of sale prescribed in the decree, that Johns' block is the thirty-third parcel or groups of parcels ordered sold. The previous parcels ordered sold belonged to Madera Fruit and Land Company and Bank of Madera. The Madera Fruit and Land Company took by deed dated January 19, 1893; the Bank of Madera (through its attachment) as of June 3, 1893. If the sheriff's deed is to be given effect as of date June 3, 1893 (date of attachment), it was error to decree the sale of the Bank of Madera lots before selling the Johns' block. That it must be so treated is beyond question. If the Madera Fruit and Land Company had sold to the Bank of Madera on June 3d, and afterward on July 13th had sold to Johns other of the mortgaged lands, clearly Johns' land should be first sold, and I can see no difference arising, in these relative rights, from the fact that the title of the bank came through the attachment. The lien attached June 3d, and if that lien is to have any value it must be held to be good as against Johns. He had constructive notice of it, and should be charged with construc-

tive notice of all the consequences to flow from it. The defendant, Bank of Madera, is directly and may be injuriously affected by this order of sale. The learned judge who tried the case evidently treated the sheriff's deed as the inception of this defendant's rights, as he found that the bank became the owner March 12, 1895, and, if that had been the fact, the decree to sell Johns' land last would not have injured the bank; but it was not the fact.

15. The decree directs the sale of lot 23, block 28, toward the last of the parcels to be offered. It was embraced in the mortgage, and was conveyed by Brown to McDonald, and by him to the John Brown Colony, and by the colony to the Madera Fruit and Land Company, and by that company to Cecil Ricketts by deed dated January 26, 1893, recorded March 25, 1893. He was not made a defendant and does not appear, and his lot has not been released. There is no finding of the court as to the then owner of this lot. To order its sale was clearly error. He was a necessary party in adjusting the equities of the various purchasers, as much so as numerous others who were brought into court. (*Porter v. Muller, supra.*)

16. Lot 4, block 64, is among the earlier parcels ordered sold. Title is in Madera Fruit and Land Company. The remaining lots in the block come later in order of sale. Title is found by the court to be in Bank of Madera of the whole block, except lot 4. The sheriff's deed to the bank describes lots 1 to 3, 5 to 6, and 22 to 32. The deed from Brown to McDonald conveyed the whole block; McDonald conveyed the whole block to John Brown Colony, and the John Brown Colony conveyed to the Madera Fruit and Land Company, through which Bank of Madera takes title only to lots 4 to 14 and 25 to 32. This chain of title leaves lots 1 to 3 and lots 15 to 24 in John Brown Colony, and this would necessarily change the order of the sale. I can find in the record no releases and no conveyances of these lots 1 to 3 and 15 to 24, except as above shown. The mortgage describes all of block 64.

The decree orders these lots sold as belonging to Bank of Madera, and makes no provision for the sale of any lots belonging to the John Brown Colony, assuming, I suppose, that there were none. So far as the John Brown Colony is concerned, not hav-

ing appealed it cannot be heard to complain of the order in which sales were directed to be made, but the sale of its lands which remain subject to the mortgage must, with reference to other defendants, and especially as to those appealing, be made with due regard for their equities.

I find no mortgaged lots still in John Brown, and no lots still in McDonald, or any immediate grantee of Brown, or in the grantee of any grantee of Brown, which have not been released. If there should be any held by his grantees, the decree properly places them last in order of sale, being first alienated.

17. The court found that lots 1 to 6 and 26 to 32, in block 28, belonged to Bank of Madera, and these lots are ordered sold as its property, with other of its lots. The record shows that the Madera Fruit and Land Company sold lots 26 to 32 in this block to W. E. Davis by deed recorded July 14, 1893. There is no evidence of any transfer by Davis or of any release of the lots. Davis appeared by his attorney and notice of the appeal was served upon said attorney, but Davis does not appeal. There are several similar transfers. The interest of such grantees should be sold before that of the Bank of Madera because its deed relates back to June 3, 1893.

18. It is claimed that the sixteenth finding (fourteenth intended) is not sustained by the evidence, in this, that the evidence shows that Bank of Madera is owner of the west half of block 59 and is not mentioned in the finding, and that Bank of Madera is not the owner of lots 27 and 28, block 53, mentioned in said finding. The court found that all of block 59 was released September 4, 1891. The west half of block 59 came by mesne conveyances into Madera Fruit and Land Company, and was part of the property attached.

John Brown sold to one Boyd lots 1 to 14 of this block September 1, 1891, and the west half of the block October 8, 1891, to McDonald, and McDonald conveyed to Madera Fruit and Land Company. The mortgage that was introduced in evidence showed an indorsement as follows: "Released by O. J. W., September 4, 1891, block 59." Plaintiff alleges the release of the whole block September 4, 1891, and this is not denied; on the contrary, defendant Bank of Madera sets out in its answer the date of the release and that it was indorsed on the margin of the

mortgage in the record of mortgages.    The evidence justifies the finding as to this block.

Lots 27 and 28, block 53, appear by the evidence to belong to the Madera Fruit and Land Company, and should be sold before the lots of the Bank of Madera are sold.

19.  The twentieth finding is attacked on the ground that the attorney of plaintiff is not shown to be entitled to any sum as attorney fees.    The mortgage provided that in case of default, etc., "the mortgagee may foreclose the mortgage, and may include in such foreclosure a reasonable counsel fee to be fixed by the court," etc.    There was an allegation in the complaint that the sum of $1,000 is a reasonable sum as attorney's fees for the prosecution of the action.    This was denied.    There is no evidence as to employment or value of the services.    The court found the sum of $750 to be a reasonable sum to be allowed, and it was carried into the decree.    The attorney brought the action and tried it and this appears from the record; no further evidence of employment was required.    The duty of fixing the amount of compensation was cast upon the court, and no evidence of value of the services was necessary.    (Stats. 1873-74, p. 707; *Carriere v. Minturn,* 5 Cal. 435; *Monroe v. Fohl,* 72 Cal. 571; *First Nat. Bank v. Holt,* 87 Cal. 158; *White v. Allall,* 87 Cal. 245.)

The decree should be modified in the following particulars: 1. The lots belonging to W. E. Johns should be sold before the lots belonging to the Bank of Madera are offered; 2. Lots 1 to 3 and 15 to 24, block 64, should be sold before the lots of Madera Fruit and Land Company; 3. Lots 27 and 28, block 53, should be sold among other of the lots belonging to the Madera Fruit and Land Company; 4. The Bank of Madera deed must take date of June 3, 1893, and the order of sales be directed with reference to that date, as in the case of W. E. Davis and other like it; 5. The provision of the decree for deficiency judgment should be stricken out; 6. Before further proceedings are had Cecil Ricketts should be made a party defendant, by due service of process, with the right to answer and litigate any issues properly raised by him; and should there be found other grantees of the mortgaged premises, not defendants, whose deeds were recorded prior to the commencement of the action, and who are necessary

parties, leave should be given to bring them in also on like terms.

The deed of the lots to Ricketts was dated January 26, 1893, but Rosenthal's and Lazar's deeds were made subsequently, so that as to these two defendants their lots should be sold before Ricketts', and his appearance cannot affect them. As to Etter, however, his deed antedates Ricketts', and Etter's lots should not be sold until after Ricketts' is sold. The defendants who have appealed should be allowed to be heard upon all issues raised by any new defendant in any way injuriously affecting them. But I see no reason for reopening the whole case and granting a new trial, for it appears that only one defendant can be affected by the appearance of Ricketts, and he only as to the order in which sale should be made. In view of the fact that at least one other person must be made a party, it becomes impracticable for us to point out the precise order in which all the various parcels must ultimately be sold. The principle adopted by the learned judge who tried the case is the correct one, as the facts now stand. If no new fact should appear, upon a further hearing, affecting the rule as in this opinion set forth, the sales should take place finally by first exhausting the property (if there be any) of the mortgagor and of McDonald and of the John Brown Colony in the order named, and then by sale of the residue in the inverse order of the various alienations as shown by the recordation of the various deeds—placing the last lots of the residue, to which there is a recorded deed, first in order of sale and so on to the first lots sold—treating the deed of the Bank of Madera as of June 3, 1893.

It is recommended that the case be remanded for further proceedings in accordance with this opinion, the costs of this appeal to be allowed to the appealing defendants.

Searls, C., and Haynes, C., concurred.

For the reasons given in the foregoing opinion it is ordered that the case be remanded for further proceedings in accordance therewith, the costs of this appeal to be allowed to the appealing defendants.

McFarland, J., Temple, J., Henshaw, J.